# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| LOTTOTRON, INC, *A New Jersey Corporation,* | : | Civil Action No. 2:10-cv-04318-JLL-CCC |
|  | : |  |
| Plaintiff, | : | The Honorable Jose L. Linares, U.S.D.J. |
|  | : | The Honorable Claire C. Cecchi, U.S.M.J. |
| v. | : |  |
|  | : | Motion Return Date:  July 5, 2011 |
| ATHILA STATION, et al., | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

---

## DEFENDANT OIGE CG LTD.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO RULES 12(b)(2) AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

---

**REED SMITH LLP**
*Formed in the State of Delaware*
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey  08543-7839
Phone:  (609) 987-0050
Fax:  (609) 951-0824
Attorneys for Defendant OIGE CG Ltd.

Of Counsel and on the Brief:

Daniel Mateo

Tracy Zurzolo Quinn

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................... 1

II.    ARGUMENT ................................................................................... 2

      A.    Lottotron Has Offered No Evidence To Show That OIGE Can Be Sued For Matters Relating To Operation Of The InterCasino Website Between 2004 and 2006. ...................................................... 2

      B.    Federal Rule Of Civil Procedure 25 Does Not Permit Lottotron To Pursue Claims Against The Wrong Party. ...................................... 5

      C.    Lottotron's Request for Jurisdictional Discovery Should be Denied.................................................................................................... 7

III.   CONCLUSION................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AGI Realty Serv. Group, Inc. v. Red Robin Int'l, Inc.*,
   81 F.3d 160 (6th Cir. 1996) ...................................................................... 3

*Bamerilease Capital Corp. v. Nearburg*,
   958 F.2d 150 (6th Cir. 1992) ................................................................... 7

*Catawba Indian Tribe v. South Carolina*,
   978 F.2d 1334 (4th Cir. 1992) ................................................................. 3

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA*,
   623 F.3d 147 (3rd Cir. 2010) ................................................................... 9

*Haeberle v. Texas Int'l Airlines*,
   497 F. Supp. 1294 (E.D. Pa. 1980) ........................................................ 3

*Mars, Inc. v. JCM American Corp.*,
   Civil No. 05-3165, 2008 WL 5401604 (Dec. 23, 2008 D.N.J.) ............. 6

*Minnesota Mining & Mfg. Co. v. Eco Chem, Inc.*,
   757 F.2d 1256 (Fed. Cir. 1985) .............................................................. 6

*Nuance Comms., Inc. v. Abby Software House*,
   626 F.3d 1222 (Fed. Cir. 2010) .............................................................. 9

*Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*,
   754 F.2d 738 (7th Cir. 1985) ................................................................... 7

*Prop-Jets, Inc. v. Chandler*,
   575 F.2d 1322 (10th Cir. 1978) ............................................................... 7

*Touchcom, Inc. v. Bereskin & Parr*,
   574 F.3d 1403 (Fed. Cir. 2009) ............................................................ 11

**Statutes**

Fed. R. Civ. P. 25 ...................................................................................... 6

Fed. R. Civ. P. 4(k)(1) ............................................................................ 11

Fed. R. Civ. P. 4(k)(2) ................................................................................ 11

## I.    INTRODUCTION

Plaintiff Lottotron, Inc. ("Lottotron") has done nothing to salvage its claim against OIGE CG Ltd. ("OIGE").  Lottotron's claims of patent infringement against OIGE relate to an internet gaming website ("InterCasino") that New Jersey residents purportedly accessed between 2004 and 2006.  Lottotron knows that OIGE had nothing to do with the InterCasino website during that time period (and, in fact, did not even exist at the time).  Lottotron nevertheless commenced this suit against OIGE because OIGE purportedly is "related" to OIGE NV, the entity that actually operated the InterCasino website up through 2006.  Lottotron does not – and cannot – allege that OIGE is a successor in interest to, or alter ego of, OIGE NV.  Instead, Lottotron apparently contends that, so long as the two companies are part of the same corporate family, it makes no difference which of them Lottotron elects to sue.  Not surprisingly, Lottotron cites no authority for this remarkable proposition.

Lottotron has no basis for maintaining its suit against OIGE.  Nor should dismissal of its case against OIGE be delayed by jurisdictional discovery. Lottotron has made no showing that discovery would turn up anything more than what has already been alleged – that OIGE and OIGE NV happen to be part of the same corporate family, and that OIGE NV, not OIGE, is the entity to which Lottotron's allegations are actually directed.  This Court should not countenance

Lottotron's attempts to pursue a claim against the wrong party or delay dismissal of its suit through pointless jurisdictional discovery. Lottotron's case against OIGE should be dismissed.

## II.   ARGUMENT

### A.   Lottotron Has Offered No Evidence To Show That OIGE Can Be Sued For Matters Relating To Operation Of The InterCasino Website Between 2004 and 2006.

Lottotron's suit against OIGE is directed entirely to the conduct of a different company, OIGE NV, which operated the accused InterCasino website between 2004 and 2006. Lottotron does not contend that OIGE is an alter ego of OIGE NV, nor does it seriously contend that OIGE is a successor in interest to OIGE NV. Notably, Lottotron offers nothing to refute the unequivocal declarations of OIGE's Director and Key Official, Godefridus Konings, attesting that OIGE is a separate company from OIGE NV and that OIGE never acquired any assets, liabilities or contractual agreements from OIGE NV, specifically including the InterCasino URL or associated trademarks. Instead, Lottotron asks this Court to simply ignore Mr. Konings' declarations in favor of a handful of irrelevant tidbits that show, at most, a fact that is not in dispute – *i.e.*, that OIGE now operates a website that OIGE NV previously operated through 2006.

Lottotron's two challenges to Mr. Koning's declaration are baseless. First, Lottotron argues that Mr. Konings is not competent to testify to OIGE corporate matters that predate his personal hire at the company. Mr. Konings is an OIGE

Director and its designated Key Official.  He has authority to speak for the company as to matters within its corporate knowledge, regardless of whether they predate his personal tenure at the company.  *See, e.g., AGI Realty Serv. Group, Inc. v. Red Robin Int'l, Inc.*, 81 F.3d 160, 160 (6th Cir. 1996) (rejecting assertion that corporate officer's affidavit must be based on first hand information) (citing *Catawba Indian Tribe v. South Carolina*, 978 F.2d 1334, 1342 (4th Cir. 1992)); *Haeberle v. Texas Int'l Airlines*, 497 F. Supp. 1294, 1299 (E.D. Pa. 1980) (corporate officer competent to testify regarding negotiation in which he did not participate).

Second, Lottotron complains that Mr. Konings does not address the activities of OIGE NV.  Mr. Konings is a corporate representative of OIGE, not OIGE NV.  In that capacity, he has unequivocally declared that OIGE and OIGE NV are different, separate companies.  He has further confirmed that OIGE did not acquire any assets or liabilities from OIGE NV.  These are all matters within the corporate knowledge of OIGE.

Lottotron does not directly dispute the substance of Mr. Konings' testimony directly.  Instead, Lottotron cites four unrelated factual tidbits, none of which demonstrates that OIGE has any responsibility for matters pertaining to the InterCasino website for the period of 2004 to 2006.  First, Lottotron cites a 2008 British Advertising Standards report regarding four television advertisements that

- 3 -

ran in the United Kingdom at some unspecified time.  The report references both OIGE and OIGE NV, apparently indiscriminately and without explanation, and lists OIGE's Malta address.  The report has nothing to do with operation of the InterCasino website in the United States between 2004 and 2006, and has no bearing on whether OIGE has any responsibility for operation of the InterCasino website during that time frame.

Second, Lottotron cites a form agreement for an InterPartners affiliation program.  The agreement appears to be a marketing and brand promotion agreement by and between the administrator of the program, OIGE NV, and member affiliates.  Under the agreement, affiliates are authorized to include on their websites hyperlinks and other material promoting other websites participating in the program.  InterCasino is listed as one of the participating websites.  Again, it is not clear what Lottotron hopes to show with this agreement.  It has nothing to do with operation of the InterCasino website in the United States between 2004 and 2006, and does nothing to demonstrate that OIGE has any responsibility for matters pertaining to the InterCasino website during that timeframe.

Third, Lottotron notes that the InterCasino website logo states that the website was established in 1996.  Once again, it is not clear what Lottotron hopes to accomplish with this citation.  There is no dispute that the InterCasino website existed for some time before OIGE was formed in 2007.  The question is whether

Lottotron has any basis for asserting that OIGE can be sued for matters pertaining to operation of that website between 2004 and 2006. The website logo does nothing to advance Lottotron's cause.

Finally, Lottotron notes that in a May 2006 report to the U.S. Securities and Exchange Commission, third party Cryptologic, Inc. ("Cryptologic") reported that it had renewed its license to OIGE NV of software to operate the InterCasino website. Like Lottotron's other citations, that report (made a year before OIGE was formed, and while OIGE NV was still operating the InterCasino website) does nothing to support Lottotron's contention that OIGE can be sued for matters pertaining to operation of the InterCasino website between 2004 and 2006.

At most, giving the greatest possible credence to the facts that Lottotron has presented, Lottotron has alleged that: (a) OIGE NV operated the InterCasino website through 2006; (b) OIGE now operates the InterCasino website (but did not do so through 2006); and (c) OIGE and OIGE NV are part of the same corporate family. These facts do not put OIGE in the shoes of OIGE NV for purposes of Lottotron's infringement claims.

### B.      Federal Rule Of Civil Procedure 25 Does Not Permit Lottotron To Pursue Claims Against The Wrong Party.

Lottotron claims that Federal Rule of Civil Procedure 25 authorizes it to sue one corporate entity for activities engaged in by another member of its corporate family. This is a fundamental distortion of Rule 25.

Rule 25(c) applies to situations in which suit has been filed against one party, and that party transfers its interest in the matter in question to another party during litigation. In that event, Rule 25 provides that the plaintiff may proceed with its claim against the original party in interest unless, on motion, the Court orders a substitution or joinder of the transferee party. Fed. R. Civ. P. 25. *See also, e.g., Mars, Inc. v. JCM American Corp.*, Civil No. 05-3165, 2008 WL 5401604 (Dec. 23, 2008 D.N.J.) (explaining that "[t]he transferee is not joined because its substantive rights are in question; rather, the transferee is brought into court solely because it has come to own the property in issue") (quoting *Minnesota Mining & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1263 (Fed. Cir. 1985)). Importantly, "Rule 25(c) is not designed to create new relationships among parties to a suit but is designed to allow the [original] action to continue unabated when an interest in the lawsuit changes hands." *Id.*

In this case, if Lottotron had sued OIGE NV, and then discovered during litigation that OIGE had assumed OIGE NV's rights and responsibilities pertaining to operation of the InterCasino website (including liabilities arising from operation of the website between 2004 and 2006), then Rule 25 would permit Lottotron to either proceed with its suit against OIGE NV or move to either substitute or join OIGE as the proper party in interest.

Lottotron's invocation of Rule 25, by contrast, has no relation to the actual purpose of the rule. Lottotron contends that Rule 25 allows it to sue the wrong party, then leave it to the Court to figure out which party should actually be named and correct Lottotron's errors if it can. That is an absurd reading of the rule and, not surprisingly, is not supported by any of the cases that Lottotron cites. *See Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 154 (6th Cir. 1992) (substitution due to corporate name change); *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985) (substitution of parties to enforce judgment where interest at issue transferred); *Prop-Jets, Inc. v. Chandler*, 575 F.2d 1322, 1323-24 (10th Cir. 1978) (considering substitution where party assets transferred due to foreclosure sale).

Lottotron's infringement claims are properly directed to OIGE NV. Lottotron offers no explanation or excuse for either its decision not to pursue those claims against the proper party or its stubborn insistence on asserting those claims against a different entity, OIGE. Whatever Lottotron's reasons, it must live with the consequences of its decision to sue the wrong party – dismissal of its suit.

### C.     Lottotron's Request for Jurisdictional Discovery Should be Denied.

Lottotron hopes to delay the inevitable dismissal of its claim against OIGE with a demand for jurisdictional discovery. Lottotron has failed, however, to demonstrate any entitlement to such relief, for at least two reasons.

First, no amount of jurisdictional discovery, regardless of its outcome, can cure the fact that Lottotron has sued the wrong party. Lottotron admits that OIGE had nothing to do with operation of the accused InterCasino website during the relevant 2004-06 time frame. And Lottotron has not come forward with a single fact to show that OIGE NV, the actual operator of the InterCasino website during that time period, transferred any assets, liabilities or interest to OIGE that would make OIGE a successor to OIGE NV for purposes of Lottotron's infringement claims. On the contrary, OIGE has unequivocally confirmed that OIGE and OIGE NV are separate companies, and that OIGE did not acquire *any* assets, liabilities or contractual assignments from OIGE NV, specifically including any assets or liabilities relating to OIGE NV's interest in and/or operation of the InterCasino website through 2006. There is nothing Lottotron can learn through discovery directed to OIGE's contacts with New Jersey (which is the proper, limited scope of jurisdictional discovery) to change the fact that whatever infringement claim Lottotron might have regarding the InterCasino website, its claim is not against OIGE.

Second, even if Lottotron had sued the right party and the dispute was limited to the question of personal jurisdiction, Lottotron has not met its burden of demonstrating a right to jurisdictional discovery. Lottotron's request for jurisdictional discovery is evaluated under Third Circuit law. *See Nuance Comms.,*

*Inc. v. Abby Software House*, 626 F.3d 1222, 1235 (Fed. Cir. 2010).  The Third

Circuit has held that, "[i]f the plaintiff presents factual allegations that suggest with

reasonable particularity the possible existence of the requisite contacts between

[the party] and the forum state, the plaintiff's right to conduct jurisdictional

discovery should be sustained.  A plaintiff may not, however, undertake a fishing

expedition based upon only bare allegations, under the guise of jurisdictional

discovery."  *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d

147, 157 (3rd Cir. 2010) (internal citations and quotations omitted).

　　　Here, Lottotron has not alleged that OIGE has *any* contacts with New Jersey,

much less alleged facts to suggest with "reasonable particularity" that OIGE might

have sufficient contacts with this forum to be subject to jurisdiction here.  Instead,

Lottotron bases its demand for jurisdictional discovery on its threadbare assertions

that:  (a) OIGE should be considered a "transferee" of OIGE NV's rights and

responsibilities relating to operation of the InterCasino website between 2004 and

2006; and (b) OIGE NV, as operator of the InterCasino website between 2004 and

2006, had sufficient contacts with this forum to subject it to personal jurisdiction

here (had Lottotron bothered to actually sue it).  Lottotron has failed to make even

a minimal *prima facie* showing to support these allegations.

　　　First, as shown above, Lottotron vaguely asserts that there must have been

some "apparent transfer" of rights between OIGE NV and OIGE relating to the

InterCasino website, but does not allege a single fact to show what that transfer is supposed to have been or how it could suffice to put OIGE in OIGE NV's shoes as a successor in interest for purposes of Lottotron's infringement claims. More specifically, Lottotron has offered nothing to rebut OIGE's unequivocal showing that OIGE is a separate entity from OIGE NV, and that OIGE did *not* acquire from OIGE NV any assets, rights or liabilities pertaining to the InterCasino website.

Second, even if OIGE had succeeded to OIGE NV's responsibility for operation of the InterCasino website through 2006, Lottotron still has not alleged sufficient facts to suggest that OIGE NV would be subject to personal jurisdiction in this forum. Lottotron's assertion of personal jurisdiction against OIGE NV is based on a 2001 settlement regarding internet sports betting and a single internet posting from 2003 attesting to one putative New Jersey resident's satisfaction with a payout to his Neteller account. These averments do not suggest with "reasonable particularity" the likelihood of jurisdictional contacts between OIGE NV and this forum because, as stated in OIGE's opening brief: (a) neither of these events took place within the time period relevant to Lottotron's patent infringement claims, and thus should not be considered for jurisdictional purposes; (b) neither of these events demonstrates that OIGE NV directed its activities to residents of New Jersey, rather than the United States generally; and (c) neither of these events

relates to the accused conduct that is the subject of Lottotron's infringement claims. *See* D.N. 159-1 (OIGE opening brief), at 7-9.[1]

To establish a right to jurisdictional discovery, Lottotron had to allege sufficient facts to demonstrate with "reasonable particularity" that OIGE and/or OIGE NV (assuming OIGE were deemed a successor to OIGE NV) had sufficient contacts with New Jersey to be subject to specific personal jurisdiction in this forum. Lottotron has failed to meet that burden and cannot now embark on a fishing expedition, in the guise of jurisdictional discovery, in hopes of finding some basis to maintain its suit against OIGE, a company that had nothing to do

---

[1] Lottotron concedes, as it must, that activities directed generally to the United States do not suffice to establish specific personal jurisdiction over a party in a particular forum. Lottotron Opposition Br., at 7. Lottotron's suggestion that *Touchcom* might stand for a contrary proposition is highly disingenuous. The plaintiff in *Touchcom* sued non-U.S. attorneys for legal malpractice. It asserted specific personal jurisdiction in Virginia pursuant to Fed. R. Civ. P. 4(k)(1) (which requires contacts with a specific forum to establish personal jurisdiction) or, in the alternative, Fed. R. Civ. P. 4(k)(2) (which allows plaintiffs to sue foreign defendants based on general contacts with the U.S. if it is shown that the defendants cannot be subject to personal jurisdiction in any specific U.S. forum). The *Touchcom* court held that the plaintiff had not established sufficient contacts between the defendants and Virginia pursuant to Rule 4(k)(1). The court then determined, however, that the plaintiff had properly invoked Rule 4(k)(2) in the alternative, and had shown sufficient contacts between the defendants and the U.S. generally to establish jurisdiction under that rule. It was in that context that the court addressed the defendants' general U.S. contacts, in the language quoted by Lottotron. Lottotron, by contrast, has not invoked Rule 4(k)(2).

with operation of the InterCasino website through 2006 and against which

Lottotron has no legitimate cause of action.

## III.   CONCLUSION

For the reasons set forth above and in its opening brief, OIGE CG Ltd.

respectfully requests that this Court dismiss Plaintiff's Amended Complaint

pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), together with such other and

further relief as this Court may deem proper.


Date:  July 5, 2011                              REED SMITH LLP

                                        By:  _ _/s/ Daniel Mateo_____ _

                                              Daniel Mateo
                                              Princeton Forrestal Village
                                              136 Main Street
                                              Suite 250
                                              Princeton, NJ 08540
                                              Telephone: 609-987-0050
                                              Facsimile: 609-951-0824
                                              email: dmateo@reedsmith.com

                                              Tracy Zurzolo Quinn
                                              2500 One Liberty Place
                                              1650 Market Street
                                              Philadelphia, PA 19103
                                              Telephone: 215-851-8100
                                              Facsimile: 215-851-1420
                                              email: tquinn@reedsmith.com

                                              Counsel for Defendant OIGE CG LTD.